UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TALLAHASSEE BAIL FUND, INC.,

    Plaintiff,

v.

GWENDOLYN MARSHALL, in her
individual and official capacities as Clerk
of the Circuit Court and Comptroller for
Leon County, Florida,

    Defendant.

Case No.: 4:22-cv-297

_____/

## COMPLAINT

1. The Tallahassee Bail Fund, Inc. (the "Bail Fund"), helps persons who have been arrested and detained pretrial in jail. It posts cash appearance bonds on their behalf, which pays for their release from custody. If the Bail Fund were a bail bond agent, at the conclusion of the criminal case, Clerk Gwendolyn Marshall would return the money to the Bail Fund, if the person satisfied the cash bond by appearing for court as directed. Yet, as prescribed by § 903.286(1), Fla. Stat., Clerk Marshall instead withholds and confiscates from the Bail Fund's cash bond court costs, fines, and fees ("LFOs") imposed in the underlying criminal case or other cases—simply because it is not a bail bond agent. Due to this, the Bail Fund

is deprived of all or some of its posted cash bond. Clerk Marshall's policy and practice violates the U.S. Constitution.

## JURISDICTION & VENUE

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violations of civil rights under the Eighth and Fourteenth Amendments to the United States Constitution

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper under 28 U.S.C. § 1391(b) because all parties reside in the Northern District of Florida and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

5. Plaintiff Tallahassee Bail Fund, Inc., is a Florida nonprofit corporation.

    (a) The Bail Fund incorporated as of August 1, 2022. Prior to incorporation, the Bail Fund operated as an unincorporated association. All association funds and accounts receivable were transferred to the corporation on August 3, 2022.

(b) The Bail Fund has received and continues to receive donations from members of the public. It has used and will continue to use these donations to pay for cash appearance bonds and association or corporate program expenses.

(c) The Bail Fund is a Florida resident and a surety. *See* § 903.05, Fla. Stat. The Bail Fund is not a bail bond agent. It is not a surety insurer.

6. Defendant Gwendolyn Marshall is the Clerk of the Circuit Court and Comptroller for Leon County, Florida. She creates the clerk's office policies and directs her staff under her control and supervision to comply with these policies. Clerk Marshall at all instances relevant to this complaint acted under the color of law. She is sued in her personal and official capacities.

## FACTS

### A. Withholding from Cash Bonds

7. Some people arrested in Leon County, Florida, for a state-law offense must satisfy a monetary bail as a condition of release in order to be released from jail prior to trial.

8. When a judge sets bail in an individual's case, the judge necessarily deems that individual eligible for pretrial release. An arrested person has a constitutionally protected fundamental liberty interest in being free from physical restraint, including pretrial incarceration. Once a judge has set a money bail

condition, the arrested person has a liberty interest in posting that bail and securing their freedom.

9. In Leon County, Florida, this monetary bail condition is often satisfied in one of two ways. The Leon Sheriff receives either (1) a "cash appearance bond" of the full monetary bail amount in cash or (2) a bond for the full amount issued by a professional surety.

10. Each bond serves as security for the appearance of the accused at criminal court proceedings. If a person fails to appear as directed, the bond may be forfeited.

11. After the criminal case is resolved with a criminal judgment, acquittal, dismissal, or otherwise, if the defendant criminal defendant appeared as required, the bond is canceled or returned.

    (a) If a bail bond agent posted the bond, then Clerk Marshall cancels and returns the bond in full to the agent.

    (b) If anyone else posted the bond, then as prescribed by § 903.286(1), Fla. Stat., Clerk Marshall's policy is to automatically withhold and retain from the escrowed cash bond any unpaid LFOs imposed in a Leon County case and return the remainder, if any.

12. This withholding scheme is unrelated to the acceptable purposes of bail.

13. Clerk Marshall is the final decisionmaker for the clerk's office with respect to returning and cancelling bonds and withholding LFOs from deposited cash bonds. Clerk Marshall chose to adopt § 903.286(1), Fla. Stat., as her office's official policy.

14. The Bail Fund has posted cash bonds for some people arrested and detained in jail. Since January 2021, the Bail Fund deposited 17 cash appearance bonds in Leon County with an aggregate value of $12,700. (a) $2,000 has been forfeited under other statutes. (b) $2,750 has been returned to the Bail Fund after the charges against the accused were dismissed. (c) Clerk Marshall has withheld at least $5,200 from the return of the Bail Fund's cash bonds. She has applied this money toward unpaid LFOs in both the criminal case in which the cash bond was posted and other cases. (d) $2,750 in cash bonds remain undisposed. This lawsuit pertains to categories (c) and (d).

15. The Bail Fund will continue to post cash appearance bonds for some people arrested and detained in jail. Clerk Marshall will continue to withhold from the return of the Bail Fund's cash bonds any unpaid LFOs.

16. The amount of money Clerk Marshall will unconstitutionally withhold from the Bail Fund is impossible to calculate. The amount of LFOs that will be imposed in any given criminal case (or another case) varies widely and depend on the ultimate sentence imposed. The LFOs often range from a few hundred dollars

to several thousand dollars. There is no consistent way for the Bail Fund to predict whether a person will owe these debts at the end of a case and, if they do, how much they will be.

17. Clerk Marshall, other local officials, and the plain text of § 903.286 provide no forum or process for the Bail Fund or other third parties to challenge the legality of the withholding during or after the conclusion of the arrestee's criminal case. Indeed, Clerk Marshall's agents informed members of the Bail Fund that the only process for challenging the withholding of cash bond deposits is filing a lawsuit, like this one, unless the Florida Legislature amends or repeals § 903.286.

18. The standard form used by the Leon Sheriff when receiving a cash appearance bond, Exhibit 1-1, requires the depositor to acknowledge the clerk may withhold from the cash bond's return unpaid LFOs owed in Leon County. When depositing a cash bond and signing the form, Bail Fund does not *voluntarily* agree to be bound by § 903.286(1), Fla. Stat. The Sheriff will not accept a cash appearance bond unless the depositor signs it. The Bail Fund has no choice and cannot post a cash appearance bond absent its signature.

19. Clerk Marshall's policy to withhold and retain unpaid LFOs from the return of a cash bond deters people from depositing cash bonds. Her policy results in fewer accused persons being released.

20. Clerk Marshall's policy also incentivizes people to purchase a professional bond. Those generally cost a non-refundable fee of 10% of the bond's amount.

21. Clerk Marshall's policy particularly harms people charged with relatively minor charges who cannot afford to purchase a professional bond. The people the Bail Fund has bailed out since the start of 2021 had no other means of release. Each day, more people are incarcerated in Leon County jail on bail amounts they cannot afford. Without the Bail Fund's assistance, they will be incarcerated in jail until the resolution of their cases.

22. Pretrial detention has significant negative consequences. Those incarcerated have difficulty conferring with attorneys to defend their case, face mounting pressures as work and family responsibilities go untended, are unable to provide for their own medical needs or those of dependents, and are left in unsafe and unsanitary conditions. Controlling for other factors, pretrial incarceration is the single greatest predictor of a conviction: many people plead guilty—regardless of actual guilt or the availability of viable defenses—simply to end the ordeal of pretrial incarceration. And the significant, adverse, collateral consequences of conviction in areas such as housing, employment, and civic engagement are well documented.

23. The Bail Fund is a charitable organization established in 2020. It is a volunteer-led, grassroots organization. None of the people who manage the Bail Fund are compensated for their work.

24. The Bail Fund uses a revolving fund to pay cash bond deposits on behalf of accused persons who would otherwise remain in jail because they cannot afford bail. The revolving fund model depends on the Bail Fund receiving full returns of its cash bonds when a case concludes, which the Bail Fund then uses to pay more cash bonds.

25. Due to the Bail Fund's limited funds and the threat of Clerk Marshall withholding their cash bonds, the Bail Fund generally does not post cash bonds of more than $2,500, is selective in the cases it chooses, and has to turn away many referrals.[1]

26. Since the start of 2022, the mean cash bond the Bail Fund has posted is $660 and the median cash bond is $500. If not for Clerk Marshall's enforcement of § 903.286, the Bail Fund could and would have posted cash bonds on behalf of between eight (mean bond) and ten (median bond) more accused persons. If Clerk Marshall withholds the $2,750 the Bail Fund currently has on deposit with her, it

---

[1] In fact, since the start of 2021, the Bail Fund has had to turn away more people than it has been able to bail out.

will prevent the Bail Fund from posting cash bonds on behalf of four (mean) or five (median) more accused persons moving forward.[2]

27.  As of August 3, 2022, the Bail Fund has less than $6,000 in total funds. The Bail Fund projects losing around $5,000 solely from cash bonds posted in 2022 due to Clerk Marshall's enforcement of § 903.286.

28.  The Bail Fund, consistent with its organizational mission, will continue posting cash bonds on behalf of accused persons in Tallahassee, Florida, so long as it remains solvent. This will only subject more of this small organization's funds to seizure. And the Bail Fund will be less and less able to afford to post cash bonds on behalf of accused persons. This will result in more accused persons being subjected to pretrial confinement, as the Bail Fund is forced to turn away more clients.

29.  Through her enforcement of § 903.286, Clerk Marshall is inflicting permanent and ongoing financial losses on the Bail Fund. As the Bail Fund does not have the ability to employ a professional fundraiser, these losses will eventually bankrupt it. When that happens, people confined to Leon County jail on

---

[2] These figures assume that at least 90% of the deposits returned go into the Bail Fund's revolving fund, as is the Bail Fund's practice. This number also is an underestimation because the revolving fund model would keep using that money to bail people out as cases resolve and cash bonds are returned.

unaffordable bails of $2,500 or less will be left without assistance, dooming them to pretrial incarceration.

## COUNT 1: EXCESSIVE BAIL

30. Plaintiff re-alleges and incorporates by reference the allegations above as if fully set forth herein.

31. The Eighth Amendment to the U.S. Constitution prohibits "excessive bail." Monetary bail is excessive when it is "higher than an amount reasonably calculated" to assure the presence of an accused at criminal proceedings. *See Stack v. Boyle*, 342 U.S. 1, 5 (1951).

32. A monetary bail used for a purpose other than to assure the presence of an accused at criminal proceedings is excessive. A scheme that requires monetary bail to be used to collect LFOs, even if debts are related to the criminal case in which bail is set, makes the monetary bail excessive. This scheme violates the Eighth Amendment rights of those detained on unaffordable bail amounts in Leon County.

33. Clerk Marshall's withholding of unpaid LFOs from a return of a cash bond, as prescribed by § 903.286, uses bail for an improper purpose: to collect revenue. She thus violates the Eighth Amendment's Excessive Bail Clause.

34. Because Clerk Marshall has unconstitutionally withheld and will withhold unpaid LFOs from the return of cash appearance bonds posted by the Bail

Fund, the Bail Fund has been and will be deprived of its money and suffer financial losses. Furthermore, because of Clerk Marshall's practice and policy, the Bail Fund is deprived of the return of its money, which it could use to post additional cash bonds. This impairs its ability to advance its mission and inhibits its ability to post cash bonds, resulting in deprivations of pretrial liberty.

## COUNT 2: EXCESSIVE FINES

35. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-29 as if fully set forth herein.

36. The Eighth Amendment forbids extracting payments from innocent persons as punishment for criminal offenses committed by different persons where the property involved has no nexus to the crime. Fines must be proportional to the offense and designed to punish a culpable offender. The forced collection of a fine from a person who is not culpable is prohibited.

37. Clerk Marshall's withholding of unpaid LFOs from a return of a cash bond, as prescribed by § 903.286, punishes the Bail Fund. The Bail Fund is an innocent third party, and its cash bonds have no nexus to the crimes its clients are accused of committing. Further, the amounts of these forfeitures are grossly disproportionate to the Bail Fund's culpability—which is none whatsoever—in its clients' alleged criminal offenses. Clerk Marshall therefore violates the Eighth Amendment's Excessive Fines Clause.

38. Because Clerk Marshall has unconstitutionally withheld and will withhold unpaid LFOs from the return of cash appearance bonds posted by the Bail Fund, the Bail Fund has been and will be deprived of its money and suffer financial losses. Furthermore, because of Clerk Marshall's practice and policy, the Bail Fund is deprived of the return of its money, which it could use to post additional cash bonds. This impairs its ability to advance its mission.

### COUNT 3: DUE PROCESS

39. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-29 as if fully set forth herein.

40. The Fourteenth Amendment to the U.S. Constitution prohibits depriving property without an adequate process. At a minimum, constitutional due process requires notice and an opportunity to be heard. When possible, the notice and hearing must precede the deprivation. Furthermore, the government cannot arbitrarily deprive property.

41. Under Florida law, the clerk holds in escrow cash bonds posted and deposited by the Bail Fund. The cash remains the Bail Fund's property until and unless it is forfeited.

42. Clerk Marshall automatically withholds and retains unpaid LFOs from a return of the Bail Fund's cash bonds. She provides neither notice nor an opportunity to be heard before or after this deprivation of the Bail Fund's property.

43.     Clerk Marshall withholds and retains unpaid LFOs from a return of a cash bond without a valid purpose.

44.     Because Clerk Marshall has unconstitutionally withheld and will withhold unpaid LFOs from the return of cash appearance bonds posted by the Bail Fund, the Bail Fund has been and will be deprived of its money and suffer financial losses.  Furthermore, because of Clerk Marshall's practice and policy, the Bail Fund is deprived of the return of its money, which it could use to post additional cash bonds.  This impairs its ability to advance its mission.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully request the following relief:

A.     A declaration of the following:

   (1) § 903.286 violates the Eighth Amendment prohibition on excessive bail;

   (2) § 903.286 violates the Eighth Amendment prohibition on excessive fines; and

   (3) § 903.286 violates the Fourteenth Amendment right to due process,

B.     An injunction prohibiting Clerk Marshall from withholding and retaining unpaid LFOs from a return of a cash bond, as prescribed by § 903.286,

and conditioning the posting of cash bonds on future payment of criminal debts, including requiring parties to sign a form promising to pay such debts.

  C. An order to awarding the Bail Fund compensatory damages from Clerk Marshall to compensate it for past instances in which Clerk Marshall unconstitutionally withheld and retained unpaid LFOs from a return of a cash bond, as prescribed by § 903.286, from the Bail Fund.

  D. An award to Plaintiff from the Defendant of reasonable costs, attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988;

  E. An order retaining the Court's jurisdiction of this matter to enforce the terms of the Court's orders; and

  F. Such further and different relief as is just and proper or that is necessary to make the Plaintiff whole.

Dated: August 15, 2022

  **Respectfully Submitted,**

<u>/s/Jerry C. Edwards</u>
| | |
|---|---|
| **Jerry Edwards** | **Benjamin James Stevenson** |
| Fla. Bar No. 1003437 | Fla. Bar. No. 598909 |
| ACLU Found. of Fla. | ACLU Found. of Fla. |
| 933 Lee Road, Suite 102 | 3 W. Garden St., Suite 712 |
| Orlando, FL 32810 | Pensacola, FL  32502-5636 |
| T. 786.363.1107 | T. 786.363.2738 |
| jedwards@aclufl.org | bstevenson@aclufl.org |

**Daniel Tilley**
Florida Bar No. 102882
ACLU Found. of Fla.
4343 W. Flagler St., Suite 400
Miami, FL 33134
T. 786.363.2714
dtilley@aclufl.org

*Counsel for Plaintiff Tallahassee Bail Fund*