UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TALLAHASSEE BAIL FUND, INC.,

     Plaintiff,

v.                                                            Case No.: 4:22-cv-297-MW-MAF

GWENDOLYN MARSHALL,

     Defendant.

_____/

### TALLAHASSEE BAIL FUND'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Tallahassee Bail Fund, Inc. (the "Bail Fund"), filed its complaint (ECF No. 1) on August 15, 2022, asserting that Defendant Gwendolyn Marshall's enforcement of § 903.286, Fla. Stat., violates the U.S. Constitution. On August 22, Clerk Marshall filed a motion (ECF No. 8) under Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss this action. As set forth below, none of Clerk Marshall's arguments warrant dismissal of the Bail Fund's claims.

First, the Bail Fund sufficiently alleged Article III standing and third-party standing in its complaint. Its factual allegations, contrary to Clerk Marshall's assertions, plausibly demonstrate concrete harms and show that her actions as the final policymaker and decisionmaker for her office caused the Bail Fund's injuries.

Clerk Marshall is not entitled to absolute judicial immunity because she is not exercising judicial discretion. Instead, in withholding and seizing cash bond deposits as a judgment creditor, she is merely carrying out administrative acts.

Finally, this Court is the proper forum for this action, rather than state court, because this lawsuit was brought under 42 U.S.C. § 1983 alleging violations of the U.S. Constitution. As the Bail Fund's motion for a preliminary injunction (ECF No. 9) demonstrates, Clerk Marshall's enforcement of § 903.286 violates the Bail Fund's Eighth and Fourteenth Amendment rights. Accordingly, this Court should deny Defendant's motion to dismiss.

## FACTUAL BACKGROUND

The Tallahassee Bail Fund is a grassroots, volunteer-run coalition that was founded in 2020. Compl. ¶ 23. The Bail Fund's goal is to end wealth-based pretrial detention by providing bail relief to those who cannot afford it. The organization relies on a revolving fund model. Compl. ¶ 24. Basically, the Bail Fund posts a cash bond on behalf of an accused person using donated money, and after the accused person satisfies all required court appearances and resolves their case, the entire bond is refunded and recycled back into the revolving fund to use to post other cash bonds.

Leon County Clerk Gwendolyn Marshall's enforcement of § 903.286, Fla. Stat., threatens the Bail Fund's financial sustainability and the viability of its revolving fund model. *See* Compl. ¶ 29. Section 903.286(1) states:

> [T]he clerk of the court shall withhold from the return of a cash bond posted on behalf of a criminal defendant by a person other than a bail bond agent … sufficient funds to pay any unpaid costs of prosecution, costs of representation … , court fees, court costs, and criminal penalties. If sufficient funds are not available to pay all unpaid costs of prosecution, costs of representation … , court fees, court costs, and criminal penalties, the clerk of the court shall immediately obtain payment from the defendant or enroll the defendant in a payment plan pursuant to § 28.246.[1]

Clerk Marshall enforces this statute as it is written. A person who wants to post a cash appearance bond must sign a form acknowledging Clerk Marshall can seize their deposit under § 903.286. If they refuse to sign, they cannot post bond on the arrested person's behalf, and that person will remain incarcerated. *See* Compl. ¶ 18, Ex. 1-1.

When a case resolves, Clerk Marshall automatically confiscates the LFOs owed from the cash bond deposit before returning what remains of the cash bond, if anything, to the party that posted it. *See* Compl. ¶ 14. The Bail Fund does not

---

[1] Hereinafter, this motion will refer to the unpaid costs of prosecution, costs of representation, court fees, court costs, and criminal penalties from § 903.286(1), Fla. Stat., as "legal financial obligations" or "LFOs."

receive notice until after the seizure occurs, and Clerk Marshall's office does not offer a process for challenging the seizure of cash bond deposits. *See* Compl. ¶ 17.

To date, Clerk Marshall has seized at least $5,200 from the Bail Fund's cash bond deposits pursuant to § 903.286(1). *See* Compl. ¶ 14. At the time of the filing of the complaint, the Bail Fund had $2,750 on deposit with Clerk Marshall's office in cases pending adjudication. Compl. ¶ 14, 26. The organization anticipates losing over $5,000 from cash bonds posted in 2022 alone due to Clerk Marshall's enforcement of § 903.286. Compl. ¶ 27. This is rapidly depleting the organization's revolving fund and will eventually bankrupt it. *See* Compl. ¶ 29. Thus, Clerk Marshall's enforcement of this statute diminishes the Bail Fund's reach and impairs its mission.

On August 15, 2022, the Bail Fund filed a complaint before this Court suing Clerk Marshall in her individual and official capacities. *See generally* Compl. at 1. The Bail Fund asserts three causes of action under 42 U.S.C. § 1983: (1) an Eighth Amendment excessive bail claim on behalf of the Bail Fund's current clients and future client base; (2) an Eighth Amendment excessive fines claim, and (3) a Fourteenth Amendment due process claim. *See* Compl. at 10-13. The complaint requests that the Court grant the Bail Fund injunctive and declaratory relief, attorneys' fees and costs, and compensatory damages. Compl. at 13-14.

<u>ARGUMENT</u>

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court must "assume the veracity of well-pleaded factual allegations" and "then determine whether they plausibly give rise to an entitlement to relief." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934-35 (11th Cir. 2022) (citation omitted). Plaintiff's complaint passes muster under this standard.

## I.    The Bail Fund Has Standing.

### A.  <u>The Bail Fund has suffered an injury.</u>

"To establish standing, Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling." *Dream Defs. v. DeSantis*, 553 F. Supp. 3d 1052, 1071 (N.D. Fla. 2021). "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate

for it." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). When ruling on standing at the pleading stage, courts "must accept as true all material allegations of the pleading, and must construe it in favor of the complaining party." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1228 (11th Cir. 2019). The Bail Fund properly alleged standing to satisfy this standard.

The Bail Fund alleged how Clerk Marshall harmed and will harm it and why this Court can redress its injury. Clerk Marshall enforces § 903.286 and automatically (with no opportunity to be heard) withholds unpaid LFOs imposed against an accused person from the return of the Bail Fund's posted cash appearance bonds. Compl. at ¶ 1, 11, 17. This deprives the Bail Fund of its money[2]—which limits its ability to post cash bonds on behalf of its client base— Compl. at ¶ 14-15, 26, 28, 29, 34, 38, 44, without due process, Compl. at ¶ 17. Clerk Marshall has wrongfully withheld at least $5,200 and had another $2,750 on deposit at the time of the complaint that was subject to seizure. Compl. ¶ 14. The Bail Fund also alleged that it will continue to post cash bonds during the pendency of this matter, which will then be subject to Clerk Marshall's seizure under §

_____

[2] *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (Kavanaugh, J.) ("A dollar of economic harm is still an injury-in-fact for standing purposes.").

903.286. Compl. ¶ 15. Finally, the Bail Fund projected that it will lose thousands of dollars due to Clerk Marshall's enforcement of § 903.286 moving forward, which will further harm its ability to carry out its mission of freeing arrested persons from wealth-based pretrial incarceration and eventually bankrupt its revolving fund. Compl. ¶ 27-29.  The Court can redress these injuries by enjoining Clerk Marshall from continuing this unconstitutional practice and awarding compensation to the Bail Fund for its lost money.  *Id*. at ¶ 3, Ad damnum clause.

Clerk Marshall contests only the injury-in-fact element of the Bail Fund's standing. She posits the Bail Fund has not lost any of *its* money as *other* people posted the cash to secure the cash bonds. Mot. to Dismiss at 8. But in doing this, she quibbles with the factual allegations of the complaint.[3] The Bail Fund alleged *it* posts the money. Compl. at ¶ 14-15. Before recently, it operated and posted cash bonds as an "unincorporated association." Compl. at ¶ 1. And when it incorporated in August 2022, "[a]ll association funds and accounts receivable were transferred to the corporation." *Id*. Although the complaint does not detail that the Bail Fund—as all associations, partnership, and corporations—acted through agents, this legal

---

[3] Notably, these cash bond forms were not offered as proof of harm. Rather, they were offered to demonstrate that a person must acknowledge being subject to § 903.286 before they can post a cash bond on behalf of an arrested person. *See* Compl. ¶ 18.

reality[4] should be inferred from the complaint for purposes of notice pleading.

Thus, the Bail Fund alleged it posted the cash to secure the cash bonds, it owns the

property interest in the cash and its return, and it is deprived due process when its

money is taken without an opportunity to be heard. That its agents posted the cash

bond deposits does not undermine its factual allegations.

B. <u>The Bail Fund has third-party standing to assert its excessive bail claim on behalf of its current and future clients.</u>

The Bail Fund's excessive bail claim warrants further discussion. In contrast

to the other claims where the Bail Fund asserts its own rights to avoid

unconstitutional fines and to due process, the Bail Fund asserts the right to a non-

excessive bail of people detained in jail. The Bail Fund also has third-party

standing to assert an excessive bail claim on behalf of its current and future clients.

While Clerk Marshall did not challenge the Bail Fund's third-party standing in her

motion to dismiss, the plaintiff has the burden of demonstrating standing. *See*

*League of Women Voters of Fla., Inc. v. Lee*, 566 F. Supp. 3d 1238, 1248 (N.D.

Fla. 2021). A plaintiff must satisfy three criteria to be able to bring claims on

---

[4] "A corporation is an artificial entity that can only act through its officers, agents, and employees." *LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 9 F.4th 1349, 1357 (11th Cir. 2021).

behalf of third parties: (1) "the plaintiff must have suffered an injury-in-fact that gives it a sufficiently concrete interest in the dispute"; (2) "the plaintiff must have a close relationship to the third party"; and (3) "there must be a hindrance to the third party's ability to protect its own interests." *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1339 (11th Cir. 2019). The Bail Fund satisfies each of these factors.

### 1. *Injury*

As noted earlier, the Bail Fund has adequately pleaded an injury caused by Clerk Marshall's past and ongoing enforcement of § 903.286. It has resulted in the seizure of over $5,200 of the Bail Fund's money since the start of 2021, and it will result in the seizure of more of the Bail Fund's money moving forward. *See* Compl. ¶ 14, 15, 27, 34. This is a sufficiently concrete injury. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). The Bail Fund also has a sufficiently concrete interest in the dispute because the bail condition required by § 903.286 and enforced by Clerk Marshall results in the Bail Fund having its money seized after it posts cash bonds on its clients' behalf. *See* Mot. for Prelim. Inj. at 7-10. Because the Bail Fund's economic injury "would not be remedied in a suit brought by" a person detained pretrial in jail, this "prong weighs particularly strongly in favor of standing." *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1042 (11th Cir. 2008) (addressing landlord-tenant third-party standing

in the context of a loss in value of housing property). Therefore, the Bail Fund

satisfies the first element.

### 2. Close Relationship

When evaluating the closeness of the relationship in the Eleventh Circuit,

"[t]he appropriate question is whether the identity of interests between plaintiff and

the third party are 'sufficiently close.'" *Young Apartments*, 529 F.3d at 1042. What

courts are looking for is a "relationship between the litigant and the third party

[that] may be such that the former is fully, or very nearly, as effective a proponent

of the right as the latter." *Singleton v. Wulff*, 428 U.S. 106, 115 (1976). Some

examples of situations where courts have found these sorts of close relationships

are landlords and tenants, *Young Apartments*, 529 F.3d at 1043-44; doctors and

patients, *Singleton*, 428 U.S. at 117-18; attorneys and clients, *U.S. Dep't of Lab. v.

Triplett*, 494 U.S. 715, 720-21 (1990); a criminal defendant and potential jurors,

*Campbell v. Louisiana*, 523 U.S. 392, 397-400 (1998), & *Powers v. Ohio*, 499 U.S.

400, 413-14 (1991); distributors and potential distributees, *Eisenstadt v. Baird*, 405

U.S. 438, 445 (1972); and vendors and their (potential) customers, *Carey v.

Population Servs., Int'l*, 431 U.S. 678, 682-84 & n.4 (1977), & *Craig v. Boren*, 429

U.S. 190, 194-97 (1976).

A sufficiently close relationship exists here. Like the vendor in *Craig v.

Boren*, the Bail Fund is an effective proponent of the rights of its clients because it

is fighting to prevent its own economic harm (and also further its mission). *See id.*

at 194 (noting that if the vendor followed the statute, she would "thereby incur[] a

direct economic injury through the constriction of her buyers' market"). *See also*

*Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1129-30 (M.D. Tenn.

2020) ("When discussing who may seek to vindicate a constitutional right, the

Supreme Court has expressly distinguished between 'the fortuitous connection

between a vendor and potential vendees'—which generally will not support third-

party standing—and the 'relationship between one who act[s] to protect the rights

of a' class of person and the individuals in the class of person protected." (quoting

*Eisenstadt*, 405 U.S. at 445)). What courts are really seeking in this inquiry are

aligned interests in vindicating the constitutional right at issue. *See Powers*, 499

U.S. at 413-14 (holding that the "congruence of interests" in eliminating racial

discrimination from the courtroom and the fact that the accused person "will be a

motivated, effective advocate" for the juror proved a sufficiently close

relationship).

     *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989), is

instructive on this point. The law firm petitioner in the case represented an accused

person who eventually pleaded guilty to drug crimes and forfeited virtually all of

his assets. *Id.* at 620-21. The law firm petitioner claimed an interest in $170,000 of

the forfeited assets for services it rendered as the accused person's representation.

*Id.* at 621. It argued that forfeiting those assets violated the accused person's right to counsel and due process rights. *Id.* at 623-24. The Supreme Court held that the law firm petitioner had *just tertii* standing to assert its client's constitutional rights. *Id.* at 624 n.3. The Court reasoned that the attorney-client relationship is sufficiently close and the law firm petitioner had a strong interest—due to the money at stake—in vindicating its client's rights. *Id.*

The Bail Fund is in a similar situation. Because of the economic harm it is suffering, its interests are aligned with its clients' interest in vindicating their Eighth Amendment rights. The organization's need to continue its mission and protect its revolving fund also makes it a "a motivated, effective advocate" on its clients' behalf. *Powers*, 499 U.S. at 414. Consequently, the Bail Fund and its clients' relationship is "sufficiently close" under the Eleventh Circuit test. *Young Apartments*, 529 F.3d at 1042; *see also id.* at 1043-44.

### 3. Hindrance

Finally, third-party standing asks if there "exist[s] some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411. There exist significant hindrances here.

In *Powers*, the Supreme Court explained that while individual jurors do have the right to sue over racial exclusion, "challenges are rare," and "[t]he barriers to a suit by an excluded juror are daunting." *Id.* at 414. The Court noted the difficulty

of obtaining declaratory or injunctive relief, "the small financial stake involved[,]
and the economic burdens of litigation." *Id.* at 414-15. Ultimately, the Supreme
Court concluded that "a juror dismissed because of race probably will leave the
courtroom possessing little incentive to set in motion the arduous process needed
to vindicate his own rights." *Id.* at 415.

*Young Apartments*, an equal protection challenge by a landlord on behalf of
its Hispanic immigrant tenants, also provides strong support. The Eleventh Circuit
asked "whether it 'would be difficult if not impossible for the persons whose rights
are asserted to present their grievance before any court.'" *Young Apartments*, 529
F.3d at 1043 (quoting *Barrows*, 346 U.S. at 257). In finding that the Hispanic
tenants faced hindrances, the court looked to the practical barriers, such as fears of
provoking a retaliatory response, fears of drawing attention to their immigration
status, and fears that the lawsuit against the city "would invite other legal risks."
*Id.* at 1044.

The Bail Fund's current and future clients also face significant barriers. If
the Bail Fund is unable to afford to bail out clients in the future, its client base—in
seeking to bring litigation of their own—will face the barriers of mootness,
indigence, and ripeness. *Cf. Nashville Cmty. Bail Fund*, 496 F. Supp. 3d at 1130-
31. First, pretrial incarceration is temporary, which makes a constitutional
challenge to a statute on excessive bail grounds difficult for a pretrial detainee. *See*

*Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) ("It would seem clear that under this general rule Hunt's claim to *pretrial* bail was moot once he was convicted."); *Bostick v. United States*, 400 F.2d 449, 451 (5th Cir. 1968) ("The question whether the bail set before trial was excessive became moot after the judgment of conviction was rendered.").[5] Second, the Bail Fund serves low-income clients who cannot afford their pretrial liberty. They have limited resources and cannot afford "the economic burdens of litigation." *Powers*, 499 U.S. at 414. Finally, it is unclear whether a person stuck in pretrial incarceration because they cannot afford bail would have a ripe claim against § 903.286(1) due to the statute's withholding only coming into play when a party posts a cash bond deposit. *Cf. Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (per curiam) ("Because the Act will not affect Kirby until his release from prison in 2005, we agree with the district court that Kirby's claim is not ripe for adjudication.").

It would also be difficult, if not impossible, for the clients whom the Bail Fund bailed out of jail to bring suit. These clients too have limited resources and cannot afford "the economic burdens of litigation." *Powers*, 499 U.S. at 414. Additionally, it is unclear if they would have standing. This is because while it is

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

the client's right to be free from excessive bail being violated, it is the Bail Fund who is being harmed by the withholding of the cash bond deposit. The Eleventh Circuit recently ruled that a plaintiff lacked standing where only a third party's money was at stake. *See Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 93 (11th Cir. 2022) ("Because Novocure—not Banks—is the only one on the hook, Banks does not himself have a concrete stake in this suit." (citation omitted)). Thus, like in *Barrows v. Jackson*, the only party able to vindicate the constitutional right at issue here is the third party suffering the pecuniary loss—the Bail Fund. *See* 346 U.S. at 259 ("The relation between the coercion exerted on respondent and her possible pecuniary loss thereby is so close to the purpose of the restrictive covenant, to violate the constitutional rights of those discriminated against, that respondent is the only effective adversary of the unworthy covenant in its last stand.").

Accordingly, the Bail Fund "is uniquely positioned to assert claims on behalf of its" clients. *Young Apartments*, 529 F.3d at 1044. It "is subject to enforcement under [§ 903.286], and claims to have suffered significant financial injury under that [statute], so that it has strong incentives to pursue this lawsuit." *Id.* The Bail Fund therefore satisfies the three criteria of third-party standing.

## II.    Clerk Marshall Does Not Have Absolute Immunity.

Clerk Marshall does not have absolute judicial immunity from suit. The
Supreme Court "has generally been quite sparing in its recognition of claims to
absolute official immunity." *Forrester v. White*, 484 U.S. 219, 224 (1988). A clerk
can receive quasi-judicial immunity under very limited circumstances. *See Hyland
v. Kolhage*, 267 F. App'x 836, 842 (11th Cir. 2008) ("Court clerks enjoy a
'narrower ambit of immunity than judges.'" (quoting *Tarter v. Hury*, 646 F.2d
1010, 1013 (5th Cir.1981))). "The reasons for extending judicial immunity are to
protect those officials with discretionary power similar to that exercised by a judge
and thereby to ensure courageous exercise of that discretionary power." *Scott v.
Dixon*, 720 F.2d 1542, 1546 (11th Cir. 1983). Quasi-judicial immunity is
inappropriate here.[6]

---

[6] As this Court recently ruled, clerks are not "judicial officer[s] under" 42
U.S.C. § 1983, *Courthouse News Serv. v. Forman*, --- F. Supp. 3d ----, 2022 WL
1405907, at *5 (N.D. Fla. 2022), so even if Clerk Marshall had quasi-judicial
immunity—which she does not—it would not warrant dismissal of the Bail Fund's
claims seeking injunctive and declaratory relief. *See also Ray v. Jud. Correction
Servs., Inc.*, 270 F. Supp. 3d 1262, 1289 (N.D. Ala. 2017) ("As several courts have
explained, quasi-judicial immunity is a defense to individual capacity § 1983 suits,
but not official capacity suits.").

"Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties have an integral relationship with the judicial process."[7] *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (citation omitted). Courts "determine the absolute quasi-judicial immunity of a nonjudicial official through a *functional* analysis of the action taken by the official in relation to the judicial process." *Id. See also Forrester*, 484 U.S. at 227 (holding that "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches"). Relevant to the absolute immunity inquiry "is whether the act performed by the officer is discretionary or ministerial in nature." *Scott*, 720 F.2d at 1546 (granting a clerk absolute immunity when he "exercise[d] a discretion normally reserved to the judiciary"). But it is noteworthy that "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Forrester*, 484 U.S. at 228

Clerk Marshall's collection of fines, fees, and court costs from cash bond deposits is an administrative function, not a judicial function. In *Antoine v. Byers & Anderson, Inc.*, the Supreme Court held that court reporters' duty to record court

---

[7] Clerk Marshall bears the burden of proving her claim of absolute immunity. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993) ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity.").

proceedings did not qualify as a judicial function and denied them quasi-judicial immunity. 508 U.S. 429, 432-37 (1993). Central to the Court's holding was the ministerial nature of their act at issue. The court reporters were "afforded no discretion in the carrying out of th[eir] duty; they [we]re to record, as accurately as possible, what transpire[d] in court." *Id.* at 436. Thus, they did not "exercise the kind of judgment that is protected by the doctrine of judicial immunity." *Id.* at 437.

In withholding the return of cash appearance bonds, Clerk Marshall acts as both a judgment creditor and a trustee of the cash bond. Neither role is adjudicative; they are instead administrative. *Forrester v. White* too is instructive on this point. In *Forrester*, the Supreme Court denied judicial immunity to a judge for his act of demoting and discharging the plaintiff, a parole officer. *See* 484 U.S. at 229. The Court held that "Judge White was acting in an administrative capacity when he demoted and discharged Forrester." *Id.* It reasoned that "[t]hose acts—like many others involved in supervising court employees and overseeing the efficient operation of a court—may have been quite important in providing the necessary conditions of a sound adjudicative system," but the decisions "were not themselves judicial or adjudicative." *Id.*

Significantly, Clerk Marshall herself argues that Florida law, not a court, requires her to withhold the fines, fees, and court costs under § 903.286. Mot. to Dismiss at 6-7. Thus, even though the collection of revenue under § 903.286 might

be important to Clerk Marshall's office or even the state, it is an administrative act that does not involve making discretionary decisions usually reserved to the judiciary. Indeed, the duty of collecting revenue or holding cash appearance bonds in escrow could "have been committed to a private person [instead of] one holding the office of a judge" because "[i]t is merely a ministerial act." *Ex parte Commonwealth of Va.*, 100 U.S. 339, 348 (1879). *See also Courthouse News Serv. v. Forman*, --- F. Supp. 3d ----, 2022 WL 1405907, at *5 (N.D. Fla. 2022) ("Defendant Forman's nondiscretionary duty to docket complaints does not require the exercise of independent judicial judgment. And so, it is not an act taken in a 'judicial capacity.'"); *Nashville Cmty. Bail Fund*, 496 F. Supp. 3d 1112, 1131-33 (M.D. Tenn. 2020) (holding clerk was not entitled to quasi-judicial immunity under analogous circumstances). Clerk Marshall's claim of quasi-judicial immunity therefore fails.

## III.    The Bail Fund Has Properly Sued Clerk Marshall in Her Personal Capacity for Damages.

The Bail Fund properly sued Clerk Marshall in her individual capacity. A plaintiff generally cannot recover damages under § 1983 from a state officer sued

in her official capacity.[8] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (internal citation omitted)); *id.* at 71 (holding that a "a suit against a state official in his or her official capacity … is no different from a suit against the State itself"). Conversely, a plaintiff can sue a state officer in their personal or individual capacity to recover damages. *See Hafer v. Melo*, 502 U.S. 21, 27, 31 (1991) (holding that a state officer can be liable for damages under § 1983 when sued in their personal capacity).

The Bail Fund has alleged that Clerk Marshall adopted the enforcement of § 903.286 as her office's official policy, Compl. ¶ 13; the enforcement of this policy has harmed and will continue to harm the Bail Fund, Compl. ¶ 14, 19, 27, 29; and the Bail Fund quantified the harm it has suffered, Compl. ¶ 14. The Bail

---

[8] This Court has already determined that Florida circuit court clerks are state officers under at least some circumstances. *See Courthouse News Serv.*, 2022 WL 1405907, at *3.

Fund also requested compensatory damages. Compl. at 14. These allegations are sufficient to state a claim against Clerk Marshall in her individual capacity.

### IV.    Section 903.286 Is Unconstitutional.

Section 903.286 violates the Eighth and Fourteenth Amendments to the U.S. Constitution. The Bail Fund incorporates by reference the arguments it made in its motion for a preliminary injunction. *See* Mot. for Prelim. Inj. at 7-23. Clerk Marshall argues § 903.286 is constitutional and points to *Ellis v. Hunter*, 3 So. 3d 373, 378 (Fla. 5th DCA 2009). Mot. to Dismiss at 9-11. But "[t]he Constitution leaves the federal courts as the final arbiter of federal law, a role which cannot be usurped by state courts." *Al-Site Corp v. VSI Int'l, Inc.*, 842 F. Supp. 507, 510 (S.D. Fla. 1993). *See also Rorick v. Bd. of Com'rs of Everglades Drainage Dist.*, 27 F.2d 377, 383 (N.D. Fla. 1928) ("[I]t must be said that the federal courts are bound by decisions of the highest state court in construing a state statute; but, with due deference, it is also the law that when the question arises under the Constitution and laws of the United States … federal courts do not follow state decisions, but apply the law according to federal jurisprudence and ascertainment.").

Further, *Ellis v. Hunter* is unpersuasive because it ignored the Eleventh Circuit case law that binds this Court. *Ellis* did not cite or discuss *United States v. Rose*, 791 F.2d 1477 (11th Cir. 1986), or *Campbell v. Johnson*, 586 F.3d 835 (11th

Cir. 2009). *Ellis*, 3 So. 3d at 381-83. *Ellis*'s avoidance of *Rose* does not appear to be a mistake. *Ellis* was likely aware of *Rose* because it cited *United States v. Cannistraro*, 871 F.2d 1210, 1213 (3d Cir. 1989), and *United States v. Higgins*, 987 F.2d 543, 547 (8th Cir. 1993)—two cases that discussed *Rose*. *See* 3 So. 3d at 382-83. The Florida court simply chose to ignore Eleventh Circuit.

Moreover, *Ellis* did not consider an excessive fines claim, and its due process analysis did not touch on the issues the Bail Fund raised about subjecting innocent third parties to having property with no nexus to a crime seized. *Compare* Mot. for Prelim. Inj. at 11-23, *with* 3 So. 3d at 379. Thus, the Florida court did not decide issues this Court is being asked to decide, and the issue it did decide—on excessive bail—ignored Eleventh Circuit precedent that binds the federal courts in Florida. Accordingly, this Court owes no deference to *Ellis v. Hunter* and should decide this case, raising purely federal constitutional issues, based on federal law. *See Cooper v. Aaron*, 358 U.S. 1, 18 (1958) ("[*Marbury v. Madison*] declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system.").

## V.    This Action Is Properly Before This Court.

The Bail Fund has federal question jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. The allegations in its complaint confirm this. *See* Compl. ¶ 2-3, 30-44. Yet, Clerk Marshall requests for this action to be remanded to state court to address the "substantive state law issues." Mot. to Dismiss at 11-12. But this case involves a challenge to a state statute using a federal law (42 U.S.C. § 1983) and asserting the violation of only federal constitutional rights (the Eighth and Fourteenth Amendments to the U.S. Constitution). Clerk Marshall's request misses the mark.

As an initial matter, this case was not removed, and Clerk Marshall did not file a motion to remand. *See* 28 U.S.C. § 1447.

"Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)). Thus, when jurisdiction exists, the Supreme Court has instructed that "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

That obligation exists here. The Bail Fund has sued under federal law asserting that a state officer's enforcement of a state statute violates the U.S.

Constitution, and it has properly alleged federal question jurisdiction before this Court. This case does not raise substantive state law issues that the state courts are better equipped to handle. Indeed, this Court handles these sorts of constitutional challenges all the time. *See, e.g.*, *Honeyfund.com, Inc. v. DeSantis*, --- F. Supp. 3d ---, 2022 WL 3486962 (N.D. Fla. 2022); *Austin v. Univ. of Fla. Bd. of Trustees*, 580 F. Supp. 3d 1137 (N.D. Fla. 2022); *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238 (N.D. Fla. 2021); *Claire v. Fla. Dep't of Mgmt. Servs.*, 504 F. Supp. 3d 1328 (N.D. Fla. 2020). Consequently, this Court should retain jurisdiction over this matter.

## CONCLUSION

Plaintiff Tallahassee Bail Fund, Inc., respectfully requests that this Court deny Defendant Gwendolyn Marshall's motion to dismiss.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this Response contains 5,692 words.

Respectfully submitted,

<u>/s/ Jerry C. Edwards</u>
**Jerry Edwards**
Fla. Bar No. 1003437
ACLU Found. of Fla.
933 Lee Road, Suite 102
Orlando, FL 32810
T. 786.363.1107
jedwards@aclufl.org

**Benjamin James Stevenson**
Fla. Bar. No. 598909
ACLU Found. of Fla.
3 W. Garden St., Suite 712
Pensacola, FL 32502-5636
T. 786.363.2738
bstevenson@aclufl.org

**Daniel Tilley**
Florida Bar No. 102882
ACLU Found. of Fla.
4343 W. Flagler St., Suite 400
Miami, FL 33134
T. 786.363.2714
dtilley@aclufl.org