## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**TALLAHASSEE BAIL FUND,**

> *Plaintiff*,

> v.                                    **Case No.: 4:22cv297-MW/MAF**

**GWENDOLYN MARSHALL,**

> *Defendant*,

> **and**

**ATTORNEY GENERAL OF FLORIDA,**

> *Intervenor-Defendant.*

_____/

## <u>FINAL ORDER FOLLOWING NONJURY TRIAL</u>

This case proceeded to a nonjury trial on February 15, 2024. The proceeding was initially set as an evidentiary hearing on the issue of standing at the parties' request. *See* ECF Nos. 102 & 103. But on the record at the hearing, the parties agreed that only the question of standing required a presentation of live testimony, and the remaining issues in the case should be settled on the papers previously filed in this case. At the nonjury trial, all parties had an opportunity to submit evidence relating to Plaintiff's standing to bring an Eighth Amendment excessive bail claim on behalf of its future clients—the only claim remaining in this case. At the conclusion of the

nonjury trial, this Court asked the parties if they wished to file briefs or any additional written argument. They declined.

This Court has considered the testimony, documentary evidence, and argument presented at the nonjury trial on February 15, 2024, as well as the Attorney General's filing of state court records, ECF No. 106. This Court also considered all previous filings and motions submitted in this case.

Ultimately, this case turns on whether this Court will accept the Attorney General and Defendant's invitation to overrule Supreme Court precedent on standing and Eleventh Circuit precedent on the merits. This Court cannot—and will not—accept this invitation. For this reason and the ones that follow, this Court finds that Plaintiff should be awarded judgment in its favor and that Defendant should be enjoined from enforcing section 903.286(1), Florida Statutes against Plaintiff.[1]

I

Before this Court resolves the balance of this case, it pauses to clarify the claim that remains after resolving the Attorney General's motion to dismiss and the cross motions for summary judgment. In its order on the motion to dismiss, this Court dismissed Plaintiff's excessive bail claim on behalf of its current clients for

---

[1] At no point in this case has either party suggested that Plaintiff seeks facial relief. This Court understands Plaintiff's claim as an as-applied challenge to section 903.286(1). Accordingly, as the text of the injunction will make clear, this Court's ruling only applies to Defendant's enforcement of section 903.286(1) against Plaintiff.

lack of standing. Further, this Court dismissed Plaintiff's excessive fine and procedural due process claims, brought on behalf of itself as an organization, on qualified immunity grounds and for failure to state a claim. Thus, Plaintiff's only remaining claim is its official capacity claim against Defendant for a violation of its future clients' Eighth Amendment rights to be free from excessive bail. The only remedy available for this claim is prospective declaratory and injunctive relief.

## II

With the remaining claim identified, this Court makes the following factual findings. Plaintiff is a Leon County, Florida, nonprofit entity established in May 2020 and incorporated on August 1, 2022. ECF No. 9-1 ¶¶ 3, 5–6; ECF No. 68-2 at 1–2; ECF No. 68-3 at 25. Plaintiff provides an alternative to traditional bail bond services. ECF No. 61-1 at 19. Unlike bail bond agents, Plaintiff uses a revolving cash fund to post bail for its indigent clients and it does not charge them a fee. Once a criminal case concludes, the bond amount is returned to Plaintiff, which Plaintiff then uses to pay the bonds of other pretrial detainees. *See id.*; ECF No. 61-3. Thus, Plaintiff makes pretrial release a possibility for those who can afford neither a cash bond nor a professional bond service. ECF 61-1 at 13.

Plaintiff also differs from professional bail bond services in its financial exposure under section 903.286(1), Florida Statutes. That provision directs clerks of court to "withhold from the return of a cash bond posted on behalf of a criminal

3

defendant by a person *other than a bail bond agent* . . . to pay any unpaid costs of prosecution, costs of representation . . . , court fees, court costs, and criminal penalties." § 903.286(1), Fla. Stat. (emphasis added). Consistent with section 903.286(2), the standard cash appearance bond forms issued by the Leon County Sheriff require depositors to acknowledge that Defendant may withhold from the bond's return any unpaid court costs, fines, and fees (also known as legal financial obligations, or LFOs) owed in the county. ECF No. 37-2 at 1.

Specifically, the cash appearance bond forms states that, if Plaintiff's client appears as required, the bond "shall be returned to the depositor, **less any unpaid fees, court costs and criminal penalties owed by the defendant to the Leon County Clerk of Court on this or any other criminal or civil case in Leon County per section 903.286, Florida Statutes** . . . ." *Id.* (emphasis in original). Plaintiff's directors must sign the cash appearance bond form when bailing out clients. ECF 61-1 at 34; ECF 61-3 at 2. If they do not, the Leon County Sheriff's Office will not release Plaintiff's clients. ECF 61-1 at 34; ECF 61-3 at 2. The Leon County Sheriff's Office refuses to permit Plaintiff's directors to list "Tallahassee Bail Fund" as the depositor on the bond form. ECF No. 61-3 at 2.

Once the Sheriff's Office acquires the cash bond, it transfers the funds to an account controlled by Defendant. ECF 69-2 at 29. When Defendant returns funds to Plaintiff, it uses the funds to post bonds for other individuals. ECF No. 9-1.

At the nonjury trial, Malia Bruker's testimony fleshed out the details on Plaintiff's mission and the effect that Defendant's enforcement of section 903.286(1) has on its operations. This Court found Ms. Bruker's testimony credible. Ms. Bruker is one of the cofounders of the Tallahassee Bail Fund, and she has been volunteering with the organization since its inception. From its founding through the present, Ms. Bruker helps manage Plaintiff's finances, posts bail for Plaintiff's clients on its behalf, and communicates with individuals that refer potential clients to the organization. Ms. Bruker affirmed that Plaintiff's purpose is to bail people out of jail that cannot afford to do so on their own.

Ms. Bruker explained that Plaintiff uses a referral system to develop a pool of individuals that it may bail out. At the time Plaintiff filed its complaint, it received about ten referrals a month, and the referrals have continued at about that pace since then. From this pool of referrals, Ms. Bruker and other members of the bail fund use various criteria to determine who it can use its limited funds to help. Plaintiff prioritizes individuals that are most likely to be negatively affected by incarceration, like LGBTQ people, people of color, women, and people with disabilities or medical conditions. Plaintiff is less likely to help people that are charged with or have been convicted of a violent crime or crimes against children.

Ms. Bruker also explains that a critical factor Plaintiff considers is a potential client's outstanding LFOs. The higher the amount of outstanding LFOs, the less

likely that Plaintiff will decide to bail them out because Defendant will withhold those LFOs from the cash bail returned to Plaintiff if the case ends with a conviction. Plaintiff's accounting of its expenditures shows that Defendant withheld almost one third of the cash bail Plaintiff posted on behalf of clients between the organization's inception and the time the complaint was filed. *See* ECF No. 107-1 at 2. From 2021 to the present, Ms. Bruker estimates that Defendant has withheld nearly two thirds of the money it posts for its clients' bail. *See also id.*

If Defendant had not withheld these funds from Plaintiff, the organization would have bailed out more people. This fact is established by Ms. Bruker's credible testimony on this point. While Ms. Bruker cannot identify specific individuals that Plaintiff turned away due to a lack of funds, she explained in detail the negative financial impact that Defendant's enforcement of section 903.286(1) has had on Plaintiff's revolving fund model. In plain terms, Defendant is preventing a significant portion of Plaintiff's funds from "revolving" back into its coffers. Plaintiff's record of bailing out numerous indigent defendants is undisputed. This fact, combined with the documentary evidence showing the thousands of dollars Defendant has withheld from Plaintiff backs up Ms. Bruker's testimony that Defendant deprived Plaintiff of funds that it otherwise would have used to bail out indigent pretrial detainees, as it did with the limited funds that were available.

During Ms. Bruker's cross examination, the Attorney General and Defendant attempted to undermine her credibility by identifying specific pretrial detainees that Plaintiff knew about but did not bail out. This Court finds that these potential inconsistencies do not undermine Ms. Bruker's credibility. Specifically, the Attorney General identified Reginald Donaldson as a pretrial detainee that Plaintiff knew about in 2021, but the organization did not bail out. Ms. Bruker remembered discussing Mr. Donaldson with other members of the organization, but she did not recall an exact reason why Plaintiff did not post his bail. This is not surprising given how long ago Ms. Bruker and her coworkers considered this potential client. This Court finds that Ms. Bruker's candor in admitting that she did not remember the precise rationale for a single potential client from roughly three years ago actually enhances her credibility, especially given the volume of potential clients that Ms. Bruker reviews as part of her part-time volunteer work with Plaintiff.

The Attorney General also identifies referrals for several potential clients that Plaintiff received around December 13, 2023, but Plaintiff did not bail out immediately because the organization did not have sufficient staff in town. As Ms. Bruker explained, however, Plaintiff was short-staffed because she was in Kosovo doing human rights work and Elaine Webb, the other member that typically posted bail for clients, was out of the country caring for her father suffering from cancer. The Attorney General implies that this Court should view Ms. Bruker's altruism and

Ms. Webb's absence to care for a sick parent as evidence of laziness that explains why Plaintiff bailed out fewer pretrial detainees (as opposed to Defendant's withholding). This Court categorically rejects this implication. The fact that two of Plaintiff's members spent parts of the holiday season to care for others rather than fixating solely on Plaintiff's mission does nothing—*nothing*—to call into question this Court's finding that Ms. Bruker's testimony shows Plaintiff's diminished ability to bail out potential clients due to Defendant's enforcement of section 903.286. Further, as Ms. Bruker clarified, by the time she and other members convened to discuss these referrals in early January 2024, the individuals had already been released without Plaintiff's intervention.

The Attorney General and Defendant's emphasis on Plaintiff's expenditures on aftercare services and advertising as the real drain on the organization's funds also falls flat. As Ms. Bruker explains, Plaintiff provides aftercare services for clients to, in part, increase the likelihood they show up for court dates—which means Plaintiff gets its funds back. As for fundraising, Ms. Bruker explains that Plaintiff does this to get more funds to carry out its mission—just like any other nonprofit organization. The Attorney General and Defendant's implication that Plaintiff must focus only on posting bail for clients and not other crucial parts of its mission defies logic and does not undermine this Court's determination that Ms. Bruker's testimony is credible. Further, Plaintiff's expenditures on aftercare services and advertising

8

comes from, at least in part, funds that cannot be used on bail. Ms. Bruker explained that Plaintiff received two large grants and other donations that, per the donors' requests, can only be used on non-bail items.

In short, nitpicking potential clients that Plaintiff may have been able to help does nothing to call into question Plaintiff's commitment to helping pretrial detainees when feasible—especially where this commitment is established by Ms. Bruker's credible testimony and *dozens* of other pretrial detainees that Plaintiff did help. Just because Plaintiff did not spend every last dollar in its coffers to bail out every possible pretrial detainee does not undermine Ms. Bruker's credible testimony that, if Defendant had not withheld LFOs from its clients, that it would have bailed out more pretrial detainees. It's common sense that maintaining a healthy balance of funds to use when unexpected circumstances arise is a hallmark of responsible businesses and nonprofit organizations. This is especially true where, as Plaintiff does here, the organization relies on a revolving fund model to carry out its mission.

III

Having set out its factual findings, this Court turns to standing. Because Plaintiff brings its excessive bail claim on behalf of its future clients, this Court must determine whether Plaintiff has Article III standing and third-party standing. Each requirement is addressed in turn.

A

Ultimately, when it comes to Article III standing, the inquiry is whether "concrete adverseness" exists between the parties. Over time, the Supreme Court has developed a three-part test for determining when such adverseness exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) will likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "[E]ach element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.' " *Church*, 30 F.3d at 1336 (quoting *Lujan*, 504 U.S. at 561).

1

First, injury-in-fact. This Court finds that Plaintiff suffered an injury-in-fact here—namely, its deprivation of funds. Ms. Bruker's credible testimony makes clear that Plaintiff, through its directors, posts its funds as bail for its clients. Sometimes Defendant withholds these funds to pay the LFOs of Plaintiff's clients instead of returning the money to Plaintiff. *E.g.*, ECF 61-3 at 1. An economic injury like this "is the epitome of 'concrete.' " *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (citing *Craig v. Boren*, 429 U.S. 190, at 194–95 (1976)).

2

Next up—traceability. For traceability, Plaintiff must show a "causal

10

connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *See Lujan*, 504 U.S. at 560. "[A]s with any party that is dragged into court," a plaintiff must show how each defendant's "action or inaction caused the plaintiff's alleged injury." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020) (citing *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265–66 (11th Cir. 2011)). Here, the record is clear that Plaintiff loses its funds because Defendant withholds them. Ms. Bruker's credible testimony shows that, but for Defendant's withholding of cash bonds to pay the LFOs for Plaintiff's clients pursuant to section 903.286(1), Plaintiff would have more funds returned once its clients show up for their court dates. This testimony is supported by Plaintiff's records, which were introduced without objection as evidence at the nonjury trial. These records show that, for many of Plaintiff's clients, a sizable portion of the bail that Plaintiff posts for its clients is seized by the Clerk to satisfy unpaid LFOs. *See* ECF No. 107-1. Plain and simple, Plaintiff has demonstrated a causal connection between its injuries and Defendant's conduct.

3

Finally, redressability. On this prong, Plaintiff must show that its injuries are likely to be redressed by a decision in its favor. *Lujan*, 504 U.S. at 561. This

redressability prong "focuses . . . on whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (emphasis removed). A "substantial likelihood" of redressability will satisfy this prong. *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978). And a plaintiff's redress need not be total. *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018); *see also I.L. v. Alabama*, 739 F.3d 1273, 1282 (11th Cir. 2014). In sum, "where, as here, a plaintiff has sued to enjoin a government official from enforcing a law, he must show, at the very least, that the official has the authority to enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021).

Here, this Court finds that Plaintiff's injury is likely to be substantially redressed by an injunction prohibiting Defendant from enforcing section 903.286(1). The statute's plain text makes clear that officials like Defendant are charged with enforcing the statute, and Plaintiff has shown that Defendant's enforcement of this statute against Plaintiff is causing its injury. It follows that declaring section 903.286(1) unconstitutional and enjoining Defendant from enforcing it would redress Plaintiff's harm. *See Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1127 (M.D. Tenn. 2020) (finding that an injunction barring a court clerk from

12

seizing cash bonds to satisfy LFOs and declaring the authorizing statute unconstitutional sufficiently would redress a bail fund's alleged injury for purposes of standing).

The Attorney General raised a redressability argument for the first time at the end of the nonjury trial. Her argument goes like this. The Sherriff implements section 903.286(2) by distributing the cash bail form with the acknowledgment that, "per section 903.286," Defendant will withhold any unpaid LFOs from the posted cash bail. Everyone agrees that the Sherriff requires Plaintiff to sign this form before releasing its client. Because the Sherriff is not a party to this suit, the Sherriff cannot be enjoined from including this acknowledgment on the form. And, in the Attorney General's view, Plaintiff's signature on the form with this acknowledgement will allow Defendant to retain a future client's LFOs under a contract theory, effectively eliminating any relief Plaintiff would get from an injunction directed at the Clerk alone.

This argument fails for two reasons. First, by the terms of the purported contract established by the Sherriff's bond form, any withholding of funds would be "per section 903.286, Florida Statutes . . . ." *E.g.*, 107-3. As this Court explains *infra*, Defendant cannot enforce section 903.286(1) against Plaintiff because it violates the Eighth Amendment's excessive bail clause. To the extent that the Attorney General is arguing that Defendant can enforce an unconstitutional precondition on bail

13

because the Sheriff forces Plaintiff to assent to a precondition on bail, that dog won't hunt. The Eleventh Circuit, citing a line of Supreme Court cases, explained that "where an individual's federal constitutional rights are at stake, the state cannot accomplish indirectly that which it has been constitutionally prohibited from doing directly." *Lebron v. Sec'y, Fla. Dep't of Child. & Fams.*, 710 F.3d 1202, 1217 (11th Cir. 2013). This principle applies with equal force here. Defendant cannot hide behind the Sheriff and enforce section 903.286 indirectly. Just because the Sheriff forces Plaintiff to agree to an unconstitutional precondition for Defendant to enforce section 903.286 *indirectly* under a contract theory does not mean that Defendant can get around this Court's injunction prohibiting her from withholding the funds *directly*.

Second, to the extent that the Attorney General argues that the withholding acknowledgement in the Sheriff's bond form creates a contract right separate from section 903.286, this argument is belied by the terms of the purported contract. Again, the withholding acknowledgment in the Sheriff's bond form states that "the Leon County Clerk of Court" will withhold unpaid LFOs "per section 903.286, Florida Statutes . . . ." *E.g.*, ECF No. 73-5. No part of that acknowledgement could be construed to create an agreement for any state actor to keep the cash deposited for bail separate from what section 903.286 permits. And the only entity permitted to withhold bail to pay a criminal defendant's LFOs under section 903.286 is a clerk

of court. In short, the acknowledgement on the cash bond form that Plaintiff is required to sign is nothing more than that—an acknowledgement that section 903.286 permits Defendant to withhold unpaid LFOs from the cash bond. An injunction prohibiting Defendant from enforcing section 903.286(1) renders the acknowledgement meaningless and would afford Plaintiff sufficient redress.

This Court pauses to note that a lot of ink has been spilt in the Eleventh Circuit about the importance of plaintiffs suing government officials that are actually tasked with enforcing the law. Plaintiff has unquestionably done so here—section 903.286(1) leaves no doubt that clerks like Defendant are mandated to withhold unpaid LFOs from a criminal defendant's bail. The Attorney General's argument that—ignoring Defendant's obvious role as the enforcer of 903.286(1) in this case— the Leon County Sherriff's role in distributing a form for cash bail somehow prevents Plaintiff from redressing its injury is meritless. As the resulting injunction will make clear, Defendant cannot enforce 903.286(1) against Plaintiff. Full stop.

## B

Now, Plaintiff's third-party standing. The Eleventh Circuit explained that a plaintiff attempting to bring claims on behalf of a third party must satisfy three criteria: "(1) the plaintiff must have suffered an 'injury-in-fact' that gives it a 'sufficiently concrete interest' in the dispute; (2) the plaintiff must have a close relationship to the third party; and (3) there must be a hindrance to the third party's

ability to protect its own interests." *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1339 (11th Cir. 2019). These limitations are "not constitutionally mandated, but rather stem from a salutary 'rule of self-restraint' designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." *Craig*, 429 U.S. at 193 (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)).

## 1

First, Plaintiff's injury-in-fact. As set out *supra*, Plaintiff has suffered a concrete injury because Defendant has withheld its funds.

## 2

Second, Plaintiff's close relationship with potential clients. In determining whether Plaintiff has a close relationship with its clients for purposes of third-party standing, "[t]he appropriate question is whether the identity of interests between plaintiff and the third party are 'sufficiently close.' " *See Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1042 (11th Cir. 2008). While a relationship with hypothetical clients normally will not suffice, litigants have standing "to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 510 (1975)).

16

Plaintiff has a sufficiently close relationship with its future clients to raise an excessive bail claim on their behalf. Both Plaintiff and its future clients have an interest in upholding the Eighth Amendment's protection from excessive bail and, thus, in barring Defendant from enforcing section 903.286(1). Plaintiff benefits by getting its funds back once its clients fulfill the conditions of their bonds, which Plaintiff can then put towards fulfilling its mission and bailing other clients out. Its future clients benefit because Plaintiff will remain solvent and have more funds to bail them out, affording them access to pretrial release and its associated benefits. True, Plaintiff's future clients would likely prefer the arrangement enjoyed by the organization's current clients, in which Plaintiff bails them out and pays off some of their LFOs in the process. But as Defendant withholds more of its funds, Plaintiff will be less able to post cash bonds on behalf of its clients. And if Defendant continues to enforce section 903.286(1), Plaintiff will continue to have its funds withheld and Plaintiff's future clients will not be bailed out by the organization. This mutually beneficial relationship between Plaintiff and its future clients is sufficiently close to its "to ensure that [it] will be a zealous advocate of the legal rights at issue in the suit." *Young Apartments, Inc.*, 529 F.3d at 1043.

To be sure, baked into the concept of having a sufficiently close relationship with potential clients for third-party standing is that there must be a non-speculative chance that the litigant, in fact, takes on future clients. *Cf. Aaron Priv. Clinic Mgmt.*

17

*LLC*, 912 F.3d at 1338 ("A plaintiff alleging that it would have opened a business absent the challenged action must point to at least some facts suggesting a likelihood that its business would have come about absent the challenged action."). Put another way, Plaintiff must show that but for Defendant's withholding of its funds, the organization would be substantially likely have bailed out other individuals. *Cf. id.* at 1337 (noting that a plaintiff can show an injury-in-fact in suit alleging that a state action has deterred business where it shows "concrete steps" that "suggest such an immediate intention or plan").

Here, Plaintiff has done just that. As Ms. Bruker's credible testimony and Plaintiff's records make clear, Plaintiff has an established practice of bailing out pretrial detainees. And based on Plaintiff's well-established referral system and criteria for identifying clients, it fully intended to bail out more clients but for the challenged provision. As Plaintiff notes, neither the Supreme Court nor the Eleventh Circuit has held that a litigant attempting to assert the rights of third parties must "name with certainty" potential clients. ECF No. 92 at 31–32. This Court agrees. Ms. Bruker's credible testimony shows that, even without a specific list of names, Plaintiff would have bailed out additional pretrial detainees if it had the funds that Defendant withheld. This is sufficient to show that Plaintiff's close relationship with future clients is not speculative.

18

Here's where the Attorney General asks this Court to overrule the Supreme Court. Specifically, the Attorney General insists that Plaintiff cannot have a close relationship sufficient for third party standing purposes because, under *Kowalski*, "hypothetical" or "anticipatory" relationships with third parties cannot confer third party standing. ECF No. 42 at 7. But this position is contradicted by the *Kowalski* opinion itself. Nowhere in *Kowalski* did the Supreme Court announce a bright-line rule prohibiting litigants from establishing the necessary "close relationships" for third-party standing based on anticipatory relationships. This is plain from a cursory review of the opinion. In *Kowalski*, attorneys that regularly accepted appointments to represent indigent defendants challenged a Michigan state constitutional amendment that limited a criminal defendant's right to appeal after a guilty plea. 543 U.S. at 127. The Supreme Court acknowledged that "[i]n several cases, [it] has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Id.* at 130 (quoting *Warth*, 422 U.S. at 510). But in *Kowalski*, the challenged restriction (a limitation on appeals in criminal cases) was enforced directly against criminal defendants (the third party) and only indirectly affected the attorneys (the litigants). *See* 543 U.S. at 131. This distinction prevented the attorneys from invoking the line of cases permitting litigation of future clients' rights. *Id.*

19

Here, Plaintiff's challenge fits neatly into the line of cases permitting litigants to establish the necessary close relationship for third-party standing based on anticipated relationships. Plaintiff challenges a restriction enforced *against itself*—that is, section 903.286's mandated withholding of its funds—that results indirectly in the violation of its future clients' right to be free from excessive bail. *See Kowalski*, 543 U.S. at 130 (collecting cases). Put another way, *Kowalski* does not bar Plaintiff's claim here—it clarifies that Plaintiff fits into the recognized exception for litigants bringing claims on behalf of future clients when Plaintiff itself bears the brunt of enforcement.

The Attorney General's other counterargument on this point is also unavailing. The Attorney General asserts that Plaintiff's interests cannot be sufficiently close for third-party standing because Plaintiff, as the surety in the bail process, "can effectuate the restraint of [its clients'] liberty and surrender them to the State to receive a return of deposited funds." ECF No. 42 at 8. The Attorney General fails, however, to explain why this legal possibility sunders Plaintiff's and its clients' shared interest in the client being free from excessive bail. Nor can this Court discern a meaningful distinction. Would the Attorney General argue that a Florida employer could never have a sufficiently close interest with its employee for third-party standing purposes simply because the employer could fire the employee at any time for a lawful reason? Likely not—at least not persuasively. Moreover, nothing in the

20

record indicates that Plaintiff has the means to seize its clients and return them to the State's custody for a return of its deposited funds. And to do so would run contrary to its mission. Accordingly, this Court finds that Plaintiff has a close relationship with its future clients sufficient for third-party standing.

3

This Court also finds that Plaintiff's future clients would be hindered from bringing their own excessive bail claims. Plaintiff must demonstrate that its future clients face "some hindrance" to their ability to protect their own interests. *See Powers v. Ohio*, 499 U.S. 400, 411 (1991). In gauging the hindrance faced by the persons whose rights are asserted, courts should ask "whether it 'would be difficult if not impossible for [the right-holders] to present their grievance before any court.' " *Id.* (quoting *Barrows*, 346 U.S. at 257). The Eleventh Circuit also directs courts to ask "whether the existing plaintiff is 'uniquely positioned' to vindicate the rights of the third-party minorities in question." *Young Apartments*, *Inc.*, 529 F.3d at 1043 (quoting *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 547 (S.D.N.Y. 2006)).

Plaintiff has demonstrated that its future clients would be hindered from bringing their own excessive bail claims for three reasons.

First, Plaintiff's future clients would be hard-pressed to bring an excessive bail claim before it became moot. For example, in *Bostick v. United States*, 400 F.2d

21

449, 451 (5th Cir. 1968),[2] the court held that an excessive bail claim became moot after the trial court entered the judgment of conviction. Here, too, Plaintiff's future clients would have a limited window to bring an excessive bail claim of their own while also focusing on defending against the criminal charges levied against them.

Second, Plaintiff serves low-income individuals who cannot afford to post cash bonds, let alone "the economic burdens of litigation." *See Powers*, 499 U.S. at 415 (considering the economic burden of litigation as a hindrance for rights-holders meriting third-party standing). Raising a separate constitutional challenge in a civil suit—without the benefit of appointed counsel—is likely unfeasible for Plaintiff's low-income clients.

Third, an individual client may struggle to establish standing because Plaintiff posts its own money for its clients' cash bonds and faces the financial impact of section 903.286(1) when LFOs are deducted from its deposit. In other words, once Plaintiff's future clients enjoy pretrial release, they suffer no immediate harm from their LFOs being deducted from the cash bonds that the organization posted on their behalf. Given these hurdles facing Plaintiff's future clients, this Court finds that Plaintiff is "uniquely positioned to assert claims on behalf of its" clients. *See Young*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Apartments, Inc.*, 529 F.3d at 1044. Plaintiff's future clients are substantially hindered from bringing their own excessive bail claims, making it difficult—if not impossible—for them to bring this claim on their own. *See id.* at 1043.

The Attorney General's attempts to downplay this hindrance also fail. Pointing to several means by which Plaintiff's future clients may challenge their bail determinations, along with the State's appointment of counsel to indigent defendants, the Attorney General insists that Plaintiff "cannot allege that there is a hindrance to [its clients'] ability to protect their own interests." ECF No. 42 at 9. This argument, however, ignores reality. Plaintiff's future clients will have little incentive to challenge Defendant's bail procedure after the bond has been posted, as they are freed from pretrial incarceration and do not face any immediate financial risk from Defendant's potential withholding of the cash bonds. Plaintiff, however, would shoulder the immediate financial risk and is armed with more resources to challenge the constitutionality of section 903.286. In addition, the Attorney General fails to explain how pursuing a civil claim for injunctive and declaratory relief against the challenged statute falls within the scope of representation for counsel appointed to represent a pretrial detainee in their criminal case.[3]

---

[3] *See, e.g.*, § 27.51(3), Florida Statutes ("Each public defender shall serve on a full-time basis and is prohibited from engaging in the private practice of law while holding office. Assistant public defenders shall give priority and preference to their duties as assistant public defenders and shall not otherwise engage in the practice of criminal law"); § 27.51(1), Fla. Stat. ("The public

Accordingly, this Court finds that Plaintiff has third-party standing to bring an excessive bail claim on behalf of its future clients.

*          *          *

Ultimately, as the Supreme Court made clear in *Craig v. Boren* and the Eleventh Circuit acknowledged in *Young Apartments, Inc.*, third-party standing doctrine is a salutary rule of self-restraint designed to limit judicial intervention into ill-defined and speculative controversies. It is not an inflexible constitutional limit on a federal court's jurisdiction. The controversy here is far from ill-defined or speculative. To the contrary—this case is the poster child for third party standing. As discussed *supra*, Defendant enforces section 903.286 *directly against Plaintiff*, implicating the constitutional rights of its future clients. This Court has no doubt that Plaintiff serves as an effective advocate of these rights and declines to impose a prudential bar on jurisdiction where prudence—and precedent—dictate otherwise.

IV

With Plaintiff's standing established, this Court now turns to the merits of Plaintiff's Eighth Amendment excessive bail claim brought on behalf of its future

---

defender shall represent, without additional compensation, any person determined to be indigent . . . and under arrest for or charged with a felony . . . [a] misdemeanor authorized for prosecution by the state attorney[,] . . . a violation of chapter 316 punishable by imprisonment[,] criminal contempt[,] or . . . a violation of a special law or county or municipal ordinance ancillary to a state charge [if certain conditions are met].").

clients only.[4]

The Eighth Amendment provides that "[e]xcessive bail shall not be required . . . ." U.S. Const. amend. VIII. "The purpose of bail is to secure the presence of the defendant, *Smith v. United States*, 357 F.2d 486 (5th Cir. 1966); its object is not to enrich the government or punish the defendant, *United States v. Parr*, 594 F.2d 440 (5th Cir. 1979) . . . ." *United States v. Rose*, 791 F.2d 1477, 1480 (11th Cir. 1986). The Eleventh Circuit has held that a federal clerk of court withholding a criminal defendant's cash appearance bond to satisfy a court-imposed fine violates the Eighth Amendment's excessive bail clause. *Id.* at 1479. Specifically, the Eleventh Circuit explained that it has

> no doubt that the addition of any condition to an appearance bond to the effect that it shall be retained by the clerk to pay any fine that may subsequently be levied against the defendant after the criminal trial is over is for a purpose other than that for which bail is required to be given under the Eighth Amendment. Such provision is therefore "excessive" and is in violation of the Constitution.

*Id.* at 1480.

Under this standard, this Court finds that Defendant's enforcement of section

---

[4] Defendant raised several other preliminary arguments at various stages of the proceedings—namely, that this suit does not fall under *Ex parte Young*'s exception to Eleventh Amendment state sovereign immunity; this Court should abstain from hearing this case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); and Plaintiff's suit is barred, either in whole or in part, by Defendant's absolute quasi-judicial immunity. This Court incorporates by reference its previous orders, ECF Nos. 100 & 101, that reject these arguments and others.

903.286(1) against Plaintiff violates the Eighth Amendment's excessive fines clause. As set out in detail *supra*, Plaintiff posts bail on behalf of its clients using its own funds. When Plaintiff comes forward to post bail on its clients' behalf, it is required not only to part with its funds, but also to consent to the garnishment of these funds. Put another way, Plaintiff "is being required to transfer a thing of value that is literally *in excess of*—meaning 'in surplus to'—the bail amount calculated to be necessary." *See Nashville Cmty. Bail Fund*, 496 F. Supp. 3d at 1135. "The plain language of the Eighth Amendment prohibits such a practice." *Id.* Further, the Eleventh Circuit in *Rose* explained that Defendant's extraction of such a condition violates the Eighth Amendment's excessive bail clause because it does not serve to secure the presence of Plaintiff's clients at their criminal proceedings. *See* 791 F.2d at 1480.

Here's where the Attorney General asks this Court to overrule the Eleventh Circuit. Specifically, the Attorney General insists that, rather than look to the binding Eleventh Circuit decision in *Rose*, this Court should apply the standard set out in the Eighth Circuit's decision in *United States v. Higgins*, 987 F.2d 543 (8th Cir. 1993), the Third Circuit's decision in *United States v. Cannistraro*, 871 F.2d 1210, 1212 (3d Cir. 1989), and the Florida intermediate appellate court decision in *Ellis v. Hunter*, 3 So. 3d 373 (Fla. 5th DCA 2009).

26

Unlike *Rose*, however, none of these decisions bind this Court. The Third and Eighth Circuit decisions cited by the Attorney General are not binding in this circuit. Nor is a Florida intermediate appellate court's—or any state court's—interpretation of *federal* constitutional law binding on this Court. *See Gallardo ex rel. Vassallo v. Dudek*, 963 F.3d 1167, 1180 (11th Cir. 2020).

Also, these decisions are not persuasive. The Eighth Circuit in *Higgins* held that a federal statute permitting the government, after entry of a judgment of conviction, to file a motion to seize a defendant's cash bond to satisfy fines did not violate the excessive bail clause. 987 F.2d at 548. Unlike *Rose*, which dealt "with preconditions on bail which are intended to serve other purposes than to secure the presence of the defendant," the Eighth Circuit emphasized that that the federal bond withholding statutes involved "post-conviction claims to bail." *Id.* at 547. This distinction mattered, in the view of the Eighth Circuit, because the federal bond withholding statute operated as a "simple procedural mechanism by which the government, after the purposes of bail have been served," could move to invoke a district court's long-held discretion "to order the disbursal of bond funds . . . to those with superior claims on the funds." *Id.*

But here, Plaintiff's claim is much closer to *Rose* than to *Higgins*. The condition placed on Plaintiff's submission of cash bail—that Defendant will automatically withhold the sum to satisfy any outstanding or forthcoming LFOs—is

a more explicit form of the unconstitutional condition in *Rose*—namely, a promise to pay any future fines. But in *Higgins*, the criminal defendant did not have to agree to any condition when he submitted bail. Instead, the withholding of cash bail was entirely dependent on the government filing a motion to garnish the funds. Unlike in *Higgins*, the constitutional violation here does not require a motion from the government or an order from a court, nor does the violation occur after the purpose of bail has been accomplished. In sum, *Higgins* is both nonbinding and unpersuasive.

In *Cannistraro*, the Third Circuit found that a district court's local rule granting the government a lien on an individual criminal defendant's bond to pay any cost imposed by the sentence did not violate the excessive bail clause. The district court's local rule provided that

> [i]f the sentence includes a fine or costs, however, any such fine or costs shall constitute a lien in favor of the United States on the amount deposited to secure the bond. No such lien shall attach when someone other than the defendant has deposited the cash and the refund is directed to someone other than the defendant.

*Cannistraro*, 871 F.2d at 1212. This did not violate the Eighth Amendment, in the Third Circuit's view, because the operated as "a temporary procedural shortcut which allows the government to avoid having to move for a freeze order while proceeding in its efforts to obtain a writ of execution." *Id.* at 1213. The Third Circuit distinguished *Rose*, however, noting that "the money posted by Cannistraro was his own and had not been assigned to a third party" and "nothing in Cannistraro's bail

28

bonds required him to pay any fine or to make restitution." *Id.* This last point, just as it did with *Higgins*, makes *Cannistraro* unpersuasive here.

As for *Ellis*, Florida's Fifth District Court of Appeal found, in that case, that section 903.286—the statute challenged here—did not violate the Eighth Amendment's excessive bail clause. But *Ellis* neglects to discuss or even cite *Rose*, relying instead on *Higgins* and *Cannistraro*'s distinguishable facts. And just like *Higgins* and *Cannistraro*, *Ellis* is both nonbinding and unpersuasive. Accordingly, *Rose* provides the appropriate standard for Plaintiff's Eighth Amendment excessive bail claim. And under this standard, Defendant's enforcement of section 903.286 against Plaintiff violates the Eighth Amendment's excessive bail clause.

V

Because Plaintiff succeeds on the merits of its Eighth Amendment excessive bail claim, this Court now discusses Plaintiff's entitlement to declaratory and injunctive relief. In its complaint, Plaintiff requests both a declaratory judgment and an injunction. ECF No. 1 at 13–14. "In order to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000).

Here, Plaintiff meets all three requirements. First, as discussed *supra*, Plaintiff succeeds on its Eighth Amendment excessive bail claim. The next two requirements

are discussed in greater detail.

Second, Plaintiff has shown that it has suffered an irreparable injury because Defendant's unconstitutional actions have violated its future clients' Eighth Amendment right to be free from excessive bail and that, but for Defendant's withholding of its funds under section 903.286, Plaintiff would have bailed out more pretrial detainees. Put another way, Defendant's actions caused—and continues to cause—the otherwise preventable pretrial detention of part of Plaintiff's client base.[5] Another district court addressing a bond withholding statute explained the irreparable harm posed by the avoidable pretrial detention, noting that

> [t]he risk of irreparable harm to the defendants whom [the bail fund] serves is all the more apparent. Not only do those defendants stand to potentially be deprived of their liberty, despite their eligibility for pretrial release in every way except their ability to amass enough funds, but they are likely, as the court has discussed, to face overall worse outcomes in their criminal cases, which could have negative effects on them in both the short and the long term. An inability to obtain pretrial release may lead to a plea, which may lead to serious collateral consequences, even years into the future.

*Nashville Cmty. Bail Fund*, 446 F. Supp. 3d at 304. This violation of Plaintiff's future clients' constitutional rights, combined with harm posed by avoidable pretrial detentions, qualifies as irreparable harm.

Third, Plaintiff has demonstrated that it lacks an adequate remedy at law by

---

[5] The Attorney General does not dispute that Plaintiff has suffered an irreparable injury.

alleging the absence of such a remedy in its complaint. ECF No. 1 ¶ 17. Plaintiff cannot, of course, prove an absence of an adequate remedy beyond rebutting potential remedies. The Attorney General tries to do just that by submitting two potential remedies that Plaintiff could pursue, but these are unavailing. This Court addresses each in turn.

For the first potential remedy, the Attorney General claims that because Plaintiff is a surety, the organization could pursue a breach of contract claim against the obligee—that is, the client that receives the credit from the cash bond toward his or her LFOs—to recover its lost funds. ECF No. 42 at 29–30. This argument fails for two reasons.

First, it's unlikely that Plaintiff would have valid breach of contract claims against its clients. Under Florida law, a bail bond "is a three-party contract between the state, the accused, and the surety, whereby the surety guarantees appearance of the accused." *Allegheny Cas. Co. v. State*, 850 So. 2d 669, 671–72 (Fla. 4th DCA 2003). All parties agree that Plaintiff is acting as a surety in posting bail on behalf of its clients. Both Plaintiff and its clients perform their portions of the contract—only Defendant, acting on behalf of the state, fails to return Plaintiff's money even after its clients appear for their court dates. Put another way, only Defendant, acting on behalf of the state, breaches this contract. Under this framework, a breach of contract suit against its clients is not an adequate remedy for Plaintiff.

31

Second, Plaintiff serves clients that cannot afford to post bail. ECF No. ¶ 24. If its clients cannot afford to post bail shortly after they are incarcerated, there is little reason to believe they would have sufficient funds following the resolution of their criminal case when Plaintiff suffers the loss of the cash bail it posted and sues them for breach of contract. Such a remedy cannot qualify as "adequate."

For the second potential remedy, the Attorney General insists that Plaintiff can intervene in its clients' state court cases. To support this claim, the Attorney General again cites *Ellis v. Hunter*, 3 So. 3d 373, 379 (Fla. 5th DCA 2009).[6] This case fails, however, to show that Plaintiff has an adequate remedy at law in Florida state courts. The Fifth DCA in *Ellis* explained that "[i]t is clear that section 903.286 does not prevent a person who posts a cash appearance bond from contesting the amount withheld or whether those amounts are properly owed by the defendant." 3 So. 3d at 379. The third-party challenging section 903.286 in *Ellis* also brought an Eighth Amendment excessive bail challenge that was rejected on the merits. *Id.* at 381–83. True, *Ellis* makes clear that Plaintiff could intervene in every one of their client's cases to raise the constitutional challenges they bring here. But such piecemeal litigation is not an adequate remedy. *See Lee v. Bickell*, 292 U.S. 415, 421

---

[6] The Attorney General also cites *Beare v. Orange County Clerk of Court*, 80 So. 3d 1132, 1133 (Fla. 5th DCA 2012) (per curiam), but the brief opinion does not offer any insight into whether Plaintiff could bring the same challenges they do here in its clients' criminal cases.

(1934) (noting that a "multiplicity of actions necessary for redress at law" is sufficient to "to uphold the remedy by injunction"); *Ecolab Inc. v. Paolo*, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991) ("If a plaintiff can secure legal relief only through a multiplicity of lawsuits, plaintiff has suffered irreparable harm sufficient to warrant a preliminary injunction." (citing *Wilson v. Illinois Southern Railway Co.,* 263 U.S. 574, 576–77 (1924)). Compared to the singular declaratory judgment and injunction Plaintiff seeks here—which would set clear parameters on Defendant's application of section 903.286—duplicative, repetitive litigation in each of their client's cases is not "as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity." *See Watson v. Sutherland*, 72 U.S. 74, 76 (1866).[7] Accordingly, this Court finds that Plaintiff is entitled to declaratory and injunctive relief.

VI

As set out above, Plaintiff has succeeded on its claim that Defendant's enforcement of section 903.286(1) violates its future clients' Eight Amendment right to be free from excessive bail. Accordingly,

**IT IS ORDERED**:

---

[7] This rationale applies with equal force to rebut the Attorney General's claim that Plaintiff could simply sue its clients every time its funds are withheld as an "adequate" remedy.

1. This Court declares that Defendant's enforcement of section 903.286(1), Florida Statutes against Plaintiff Tallahassee Bail Fund, Inc. violates the Eighth Amendment's prohibition against excessive bail.

2. As this Court set out in its previous order on the Attorney General's motion to dismiss, ECF No. 100:

    a. Plaintiff's Eighth Amendment excessive bail claim brought on behalf of current clients only (Count I) is due to be dismissed in part without prejudice for lack of standing.

    b. Plaintiff's individual-capacity Eighth Amendment excessive fine claim (Count II) and Fourteenth Amendment procedural due process claim (Count III) are both due to be dismissed with prejudice because Defendant is entitled to qualified immunity.

    c. Plaintiff's official-capacity Eighth Amendment excessive fine claim (Count II) and Fourteenth Amendment procedural due process claim (Count III) are both due to be dismissed with prejudice for failure to state a claim.

3. The Clerk is **DIRECTED** to enter judgment as follows: "This Court hereby **DECLARES** that Defendant Gwendolyn Marshall's enforcement of section 903.286(1), Florida Statutes against Plaintiff Tallahassee Bail Fund, Inc. violates the Eighth Amendment's prohibition against excessive

bail. This Court **GRANTS** Plaintiff's request for a permanent injunction. Neither Defendant Gwendolyn Marshall, nor her successors in office, deputies, officers, employees, agents, nor any person in active participation or concert with Defendant Marshall, shall enforce, nor permit enforcement of section 903.286(1), Florida Statutes against Plaintiff Tallahassee Bail Fund, Inc. Defendant Gwendolyn Marshall, as well as her successors in office, deputies, officers, employees, agents, and any person in active participation or concert with Defendant Marshall shall take all practicable measures within the scope of their official authority to ensure compliance with the terms of this Order. Plaintiff's Eighth Amendment excessive bail claim brought on behalf of current clients only (Count I) is **DISMISSED in part without prejudice** for lack of standing. Plaintiff's individual-capacity Eighth Amendment excessive fine claim (Count II) and Fourteenth Amendment procedural due process claim (Count III) are both **DISMISSED with prejudice** because Defendant is entitled to qualified immunity. Plaintiff's official-capacity Eighth Amendment excessive fine claim (Count II) and Fourteenth Amendment procedural due process claim (Count III) are both **DISMISSED with prejudice** for failure to state a claim."

4. This Order incorporates all prior rulings in this case.

5. This Court retains jurisdiction in this case for purposes of determining entitlement to and amount, if any, of attorneys' fees.

6.  The Clerk shall close the file.

**SO ORDERED on February 20, 2024.**

**s/Mark E. Walker**
**Chief United States District Judge**

36